UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

*Filed electronically*

| | |
|---|---|
| **INDUSTRIAL AUTOMATION, INC.** )<br>)<br>    **Plaintiff/Counterclaim Defendant,** )<br>)<br>**v.** )<br>)<br>**INDUSTRIAL AUTOMATION, LLC** )<br>**d/b/a INDUSTRIAL AUTOMATION OF** )<br>**KY** )<br>)<br>    **Defendant/Counterclaim Plaintiff.** ) | **Civil Action No. 15-00053** |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR TEMPORARY INJUNCTION**

Defendant Industrial Automation, LLC d/b/a Industrial Automation of Kentucky ("Defendant" or "Defendant Indus. Auto., LLC"), by counsel, submits this Response to Plaintiff Industrial Automation, Inc.'s ("Plaintiff" or "Plaintiff Indus. Auto., Inc.")[1] Motion for Temporary Injunction.

**INTRODUCTION**

Plaintiff initiated this action against Defendant based upon Plaintiff's purported December 15, 2014 Kentucky service mark registration for the words "Industrial Automation Inc." However, as set forth herein, the term "industrial automation" simply cannot serve as a valid and enforceable mark because it is a generic and/or descriptive term as used in connection with the provision of certain services. Accordingly, Plaintiff's demand that Defendant immediately discontinue using the name by which it's been operating in Kentucky for more than

---

[1] Notwithstanding the fact that Industrial Automation, LLC has filed a counterclaim against Industrial Automation, Inc., for the sake of brevity, Industrial Automation, Inc., as the party that initiated the lawsuit, will be referred to as "Plaintiff," and Industrial Automation, LLC will be referred to as "Defendant."

four years, and in other locations for more than two decades, has no support in law or fact. Presently before this Court is Plaintiff's Motion for a Temporary Injunction in which it seeks immediate imposition of the ultimate relief sought in its Complaint, and asks this Court to order -- in direct contravention of the status quo, and prior to any discovery or adjudication of the merits -- that Defendant "shall not use the name 'Industrial Automation' during the pendency of this lawsuit."

Plaintiff's injunction motion should be denied because Plaintiff has fallen far short of establishing any of the elements necessary for the extraordinary injunctive relief it seeks. Plaintiff cannot show a likelihood of success on the merits because its state trademark registration, upon which its claims are based, was improperly issued and is subject to cancellation because the term "Industrial Automation" is generic and merely descriptive as applied to industrial automation services. It is thereby incapable of developing any enforceable trademark rights.

In addition, Plaintiff has failed to show that immediate and irreparable harm will occur absent an injunction. Indeed, the first incident alleged by Plaintiff dates back approximately 27 months, and the purported harm asserted in the 3-4 minor incidents alleged by Plaintiff since then hardly constitutes anything beyond a temporary and *de minimus* inconvenience. In stark contrast, an injunction forcing Defendant to change its name for the pendency of this action, would cause major disruptions to Defendant's business enterprise and diminish Defendant's finances and standing. Among other things, Defendant would be forced to change and replace signage on all of its facilities, trucks, uniforms, and paperwork; and all of its contacts and communications with entities outside the company, in every form, including electronic, would

need to be overhauled. Plaintiff has failed to establish any of the elements necessary for injunctive relief and its motion should be denied.

## FACTUAL BACKGROUND

Both Plaintiff and Defendant have operated under the trade name "Industrial Automation" for more than twenty years. Industrial automation generally refers to the use of computers and controllers to make products using assembly lines, stand-alone machine tools, and robotic devices. There are numerous businesses throughout the United States providing services related to industrial automation, including many which operate under the name "Industrial Automation."[2]

Defendant has been in business since 1992 and now has full-service locations in Michigan, Kentucky, Alabama, and Mexico. (May 14, 2015 Affidavit of Mark Gust, ¶ 3, attached hereto as Exhibit A.) Defendant provides technology, expertise, and installation related to automated solutions -- everything from table-top fixtures to multi-million dollar robotic assembly lines. (Ex. A, ¶ 4.) With more than 125 employees, Defendant serves a wide variety of customers including OEM, Tier 1, and Tier 2 automotive companies. (*Id*., at ¶ 5.) Defendant's annual sales capacity is over $26 million. (*Id*., at ¶ 6.)

Defendant has conducted operations out of its Kentucky facility since 2011. (*Id*. at ¶ 7.) One of the primary factors in its decision to open a branch in Franklin, Kentucky was its desire to supply services to Nissan North America, Inc., located in Smyrna, Tennessee. (*Id*. at ¶ 8.) A major part of Defendant's business strategy is to have facilities within a 300 mile radius of customers in order to provide superior support. (*Id*.) Smyrna, Tennessee is approximately 65 miles from Industrial Automation, LLC's current location in Kentucky. (*Id*.) Defendant has

---

[2] A cursory Internet search has identified numerous businesses named 'Industrial Automation, Inc.' (*See* Exhibit B, attached hereto.) Additionally, many other companies offer "industrial automation" services. (*See* Exhibit C, attached hereto.)

signed a ten-year lease in Franklin, Kentucky, and has invested over $600,000 into its facility at that location. (*Id*. at ¶ 9.) Defendant currently has more than 15 full-time direct employees in Franklin, and expects to employ 35 at that location by 2017. (*Id*. at ¶ 10.) Annual sales capacity of the Franklin, Kentucky facility is approximately $11,000,000. (*Id*. at ¶ 11.)

The existence of Plaintiff Industrial Automation, Inc. in Russellville, Ky. played absolutely no role in the decision of Defendant to open a facility and conduct operations in Franklin. (*Id*. at ¶ 12.) Defendant has not experienced any non-*de minimus* confusion in the marketplace despite co-existing with Plaintiff Indus. Auto., Inc. for more than four years in Kentucky. (*Id*. at ¶ 13.)

In November 2014, Plaintiff applied for a Kentucky service mark of the words "Industrial Automation, Inc," asserting, among other things, that it had "not become aware of any other legal uses of the same or similar mark by third parties." (Dkt. No. 7, Att. 2, at Ex. G, p. 2.) Plaintiff's purported mark was registered in Kentucky on December 15, 2014. (Dkt. No. 7, Att. 2, at Ex. B.)

On April 8, 2015, Plaintiff filed a Complaint in Logan Circuit Court and moved for an immediate injunction preventing Defendant from using the name under which it has been operating in certain locations for more than two decades. (Dkt. No. 1, Att. 2). Defendant removed the case to federal court, answered Plaintiff's Complaint, and filed a Counterclaim seeking, among other things, cancellation of Plaintiff's purported mark on the grounds that the words "industrial automation" are generic, cannot be distinctive, and cannot develop secondary meaning. (Dkt. No. 8, at 8-9.)

# ARGUMENT

I. **Plaintiff Has Failed To Show The Elements Required For Injunctive Relief.**

A preliminary injunction is "an **extraordinary remedy** that is generally used to **preserve the status quo** between the parties pending a final determination of the merits of the action." *IP, LLC v. Interstate Vape, Inc.*, 2014 U.S. Dist. LEXIS 157932, 5 (W.D. Ky. Nov. 6, 2014) (emphasis added).[3] Rather than preserve the status quo between the parties pending a final adjudication of the merits, Plaintiff's instant motion seeks instead to upend the status quo and require, before any discovery or a full substantive assessment of the merits, that Defendant immediately discontinue use of the name it's used the last four years in Kentucky and more than the last twenty years in other locations.

In determining whether to grant injunctive relief, the Court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *IP, LLC*, 2014 U.S. Dist. LEXIS 157932 at 5. None of these factors support the issuance of the requested injunction.

    A. **Plaintiff Cannot Show a Likelihood of Success on the Merits because the Purported Mark upon which Plaintiff Bases its Claims is Invalid and Unenforceable.**

Plaintiff Indus. Auto, Inc. claims to own service mark registrations in both Kentucky and Tennessee for the words "Industrial Automation Inc." And while it may in fact currently hold

---

[3] While Plaintiff originally sought relief under Kentucky Rule of Civil Procedure 65.04 governing temporary injunctions, the federal standard for injunctive relief applies in federal court. *See Taylor Novelty, Inc. v. Taylor*, 1987 U.S. App. LEXIS 5273, 19-21 (6th Cir. 1987) (Milburn, H.T. dissenting) (collecting cases); *see also Deters v. Davis*, 2011 U.S. Dist. LEXIS 3836, 9 (E.D. Ky. Jan. 14, 2011) (relying on *Taylor Novelty* for the proposition that claims in federal court, even to the extent they are based on state law, are subject to the federal preliminary injunction standard.)

certificates for the purported marks, the words "industrial automation" simply cannot be protected by the laws of trademark. "Generic names cannot serve the function of distinguishing one party's goods because all goods of one type have the same generic name." 1-2 Gilson on Trademarks § 2.02. Under both federal law, 15 U.S.C. § 1052, and Kentucky state law, KRS § 365.567 and T.C.A. § 47-25-502, it is well-settled that trademark rights may not be established in a mark that is merely descriptive. *See also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992) (holding that generic terms "are not registrable as trademarks"); *Nartron Corp. v. STMicroelectronics, Inc.,* 305 F.3d 397, 404, 64 U.S.P.Q.2d 1761 (6th Cir. 2002) (holding that "[a] generic term can never function as a trademark"); Restatement (Third) of Unfair Competition § 15(1) ("A user cannot acquire rights in a generic designation as a trademark, trade name, collective mark, or certification mark.") Indeed, the name of a product or service itself -- what it is -- is the very antithesis of a mark. In short, a generic name of a product or service can never function as a trademark to indicate origin. The terms "generic" and "trademark" are mutually exclusive. 2 J. Thomas McCarthy on Trademarks and Unfair Competition, § 12:1 (4th Ed. 2015.)

The term "industrial automation" is categorically a generic and/or descriptive term as used in connection with the provision of certain services. *See*, *e.g.*, attachments to Ex. E submitted by Plaintiff Indus. Auto., Inc. in support of Supplement to Motion for Temporary Injunction (Dkt. No. 9, Att. 5). As such, it simply cannot achieve enforceable trademark rights.

Indeed, it is therefore not surprising that in various active trademark registrations filed with the United States Patent and Trademark Office (the "USPTO"), the USPTO has expressly determined the term "Industrial Automation" to be generic and merely descriptive as applied to industrial automation services, and thereby, incapable of developing trademark rights. *See*

Office Action on U.S. Federal Trademark Registration No. 4,714,450 for SVIA Industrial Automation (June 22, 2014) (stating that "Applicant must disclaim the wording 'Industrial Automation' because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and services, and thus is an unregistrable component of the mark....An applicant may not claim exclusive rights to terms that others may need to use to describe their goods and/or services in the marketplace.") (citations omitted).[4]

As another representative example, in the application for the mark "Emerson Industrial Automation," the examining attorney stated in an office action issued with regard to the federal trademark application:

> The applicant must <u>disclaim</u> the <u>generic wording "INDUSTRIAL AUTOMATION"</u> apart from the mark as shown… Applicant seeks registration of the mark for industrial automation equipment. Thus, <u>"INDUSTRIAL AUTOMATION" merely identifies the genus of applicant's goods</u>.

*See* Office Action issued on U.S. Federal Trademark Registration No. 3,731,688 for Emerson Industrial Automation (November 8, 2001) (emphasis added).[5] These are just some examples, of many, recognizing the generic nature of the term Plaintiff seeks to have protected, and rejecting similar attempts to convert such a generic term into a registrable and enforceable mark.

Plaintiff's reliance upon an alleged "secondary meaning" is misplaced and wholly unavailing. Because the term "industrial automation" is a generic descriptor of a certain type of service, it has no separate non-generic meaning and, therefore, is not and cannot be distinctive. Accordingly, it simply cannot develop secondary meaning for the services the term describes, namely industrial automation services. Indeed, as recognized by leading commentators:

---

[4] The pertinent pages of this Office Action on U.S. Federal Trademark Registration No. 4,714,450 for SVIA Industrial Automation (June 22, 2014) are attached hereto as Exhibit D.
[5] The pertinent pages of this Office Action issued on U.S. Federal Trademark Registration No. 3,731,688 for Emerson Industrial Automation (November 8, 2001) are attached hereto as Exhibit E.

7

> [I]t is jarring and incongruous to intrude the terminology 'secondary meaning' into a dispute as to whether a designation is an unprotectable generic name or is a protectable trademark. In one interpretation, 'secondary meaning' and 'generic name' are total opposites: a given designation cannot logically fall in both categories. If a designation is a generic name, then, by definition, it is not a trademark. If it is not a trademark, then, by definition, it does not have the kind of 'secondary meaning' needed to achieve trademark status. … It is a logical impossibility.

2 McCarthy § 12:46; *see also Continental Airlines Inc. v. United Air Lines Inc*., 53 USPQ2d 1385 (TTAB 1999) (citations omitted) (observing that, "to the extent applicant is attempting to claim acquired distinctiveness by providing promotional and advertising information, such evidence of acquired distinctiveness <u>cannot</u> suffice to <u>convert a generic term into a registrable service mark</u>") (emphasis added).

The term "industrial automation" cannot serve as a valid mark, because it serves as the generic term that is merely descriptive of industrial automation services.[6] Accordingly, Plaintiff cannot prevent the use of this phrase by others, including Defendant. As this will be ultimately determined following discovery and a full adjudication of the claims in this action, Plaintiff clearly cannot show a strong likelihood of success on the merits, and its motion for injunction should be denied.[7]

---

[6] Based on the foregoing, in accordance with KRS.§ 365.567(5)(a), the issuance of Kentucky State Trademark Certificate #018551 for the purported mark "INDUSTRIAL AUTOMATION, INC" was improperly granted because the mark is generic and merely descriptive of services. Accordingly, as part of its Counterclaim in this action, Defendant Indus. Auto., LLC is seeking cancellation of Plaintiff's state trademark certificate, pursuant to KRS § 365.591(e). *See* Dkt. No. 8, pp. 8-9.

[7] Plaintiff's claims are also factually unfounded and inherently inconsistent. Plaintiff cites events occurring in the first half of 2014 as evidence that Defendant took action "in knowing derogation" of Plaintiff's alleged rights, yet Plaintiff did not even receive its purported mark until December 2014. Moreover, by baldly contending its mark is "suggestive," Plaintiff also attempts to reach beyond the rights allegedly conferred by its purported mark to assert even greater trademark protection. (Dkt. No. 9, pp. 3-4. ("While the Kentucky Secretary of State found that Industrial Automation was descriptive, Industrial Automation believes its name is suggestive of the types of services it provides to manufacturers…"). Plaintiff does not produce any evidence that its purported mark is "suggestive" and entitled to an even higher level of trademark protection. And no such evidence exists. Determination of whether a mark is suggestive is most often based on the "imagination" test. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 763, 73 U.S.P.Q.2d 1561, FED App. 0021P (6th Cir. 2005) ("[A] suggestive mark requires the observer or listener to use imagination and perception to determine the nature of the goods.") "While a descriptive term directly and clearly conveys some information about the ingredients, qualities or characteristics of the product or service, the

### B. Plaintiff has Failed to Demonstrate that it would Suffer Irreparable Harm Absent the Injunction.

In addition to failing to demonstrate the likelihood of success on the merits, which the Sixth Circuit has observed is "usually fatal" to an injunction motion,[8] Plaintiff has also failed to show that it would suffer irreparable harm absent an injunction. *See Perfetti Van Melle USA*, 732 F. Supp. 2d at 725. In its attempt to show irreparable harm, Plaintiff can offer only minor, isolated examples of alleged inconvenience and confusion that do not warrant injunctive relief. Indeed, "[e]vidence of actual confusion may be dismissed as *de minimus* if it is of limited scope." *McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 808 (M.D. Tenn. 2000). To be sure, isolated instances of confusion after a significant period of time of concurrent sales do not always suggest an increased likelihood of confusion and may even suggest the opposite. *Borescopes R US v. 1800Endoscope.com*, LLC, 728 F. Supp. 2d 938, 952 (M.D. Tenn. 2010) (*citing Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997).

Here, Defendant has been doing business in Kentucky since 2011. As evidence of Plaintiff's purported harm and confusion, it alleges that its customer complained when it received a quote from Defendant in February 2014. (Dkt. No. 7, p. 3.) However, the document supplied by Plaintiff shows that the customer requested the quote from Defendant. (Dkt. No. 7, Att. 2, at Ex. H.) ("Quotation is based upon the RFQ submitted by Kyle Campbell on 1/22/14.") Moreover, the customer was able to recognize the error and contact Plaintiff. This isolated

---

'suggestive' term only indirectly hints at these things." 2 McCarthy § 11:67. One would be hard-pressed to explain how a consumer would have to use any imagination or perception at all to determine that the name Industrial Automation is used to describe industrial automation services. Such a scenario is analogous to arguing that the "trademark" APPLE PIE for selling apple pies is a "suggestive" mark. Not only is "apple pie" not suggestive, it is, quite clearly, the generic term for apple pie. As such, it can never gain trademark rights. The analysis for "Industrial Automation" is the same. And so is the result.
[8] *See Gonzalez v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

instance of alleged customer confusion prior to a sale is plainly *de minimus* and does not warrant injunctive relief.

Plaintiff also alleges that three administrative errors occurring after a business transaction are further evidence of harm and confusion. It indicates it received vendor invoices intended for Defendant on two occasions; once in February 2013 and again in April 2014. (Dkt. No. 7, Att. 2, at. Ex. I.) Plaintiff further complains about receiving a payment intended for Defendant in April 2015. (Dkt. No. 8, pp. 1-2.) However, these alleged administrative errors did not cause any confusion to a customer trying to select between the services offered by either party. Rather, they occurred post-transaction, and were easily corrected as demonstrated by the documents submitted by Plaintiff.

Finally, Plaintiff alleges an error in the Bowling Green phonebook, specifically that Plaintiff's phone number was alongside Defendant's under the heading 'Industrial Automation.' (Dkt. No. 7, pp. 2-3.) Defendant's other phone number is clearly listed below under the separate heading "Industrial Automation LLC." The phonebook's error in placing Defendant's number alongside Plaintiff's is outside of Defendant's control, and Defendant has an equally strong interest in having the phone book correct its error. Plaintiff's instances of alleged harm are isolated and *de minimus*, and do not warrant injunctive relief.

Likewise, Plaintiff has failed to show the <u>immediacy</u> of any alleged harm. "To establish immediate and irreparable harm there must be an actual, viable, presently existing threat of serious harm." *C.A. Jones Mgmt. Group, LLC v. Scottsdale Indem. Co.*, 2014 U.S. Dist. LEXIS 25931, 11 (W.D. Ky. Feb. 28, 2014). Plaintiff has identified just one or two instances of alleged customer confusion, and three administrative errors as evidence of confusion, since Defendant began conducting business in Kentucky in 2011. These alleged instances of harm, many of

10

which date back into last year, do not constitute the kind of "actual, viable, presently existing threat of serious harm" requiring injunctive relief. *C.A. Jones Mgmt. Group, LLC*. Certainly, if these events were truly causing immediate and irreparable harm, Plaintiff would not have waited so long to seek relief. Accordingly, Plaintiff has failed to demonstrate immediate and irreparable harm, and its motion should be denied.

### C. An Injunction Would Cause Substantial Harm To Defendant and to the Public Interest.

In addition to the foregoing, the remaining elements of the pertinent standard, which analyze harm to others and harm to the public interest, also do not support the issuance of injunctive relief. Indeed, an injunction would undeniably cause immediate, concrete and considerable harm to the Defendant by wiping out the status quo before the parties have had a full opportunity to properly adjudicate their current trademark dispute.

The determination of whether an injunction will cause substantial harm to others "is most commonly examined in terms of the balance of hardships between the parties." *IP, LLC*, 2014 U.S. Dist. LEXIS 157932, 20. Here, an injunction would simply devastate Defendant's business before the Court has a full opportunity to assess the validity and enforceability of Plaintiff's purported mark. The injunction being sought would immediately impose almost crippling monetary, logistical, and commercial hardships upon Defendant. (Ex. A, ¶ 14.) Defendant has more than 125 employees serving a wide variety of customers domestically and internationally. (*Id*. at ¶ 5.) An injunction forcing Defendant to change its name, during the pendency of this action, would cause major disruptions to Defendant's business enterprise and diminish Defendant's finances and standing. At a minimum, Defendant would be forced to change and replace signage on all of its facilities, trucks, uniforms, and paperwork. (*Id*. at ¶ 15.) All of its

11

contacts and communications with entities outside the company, in every form, including electronic, would need to be overhauled. (*Id*. at ¶ 16.)

Conversely, the purported clerical hardships asserted by Plaintiff consist only of minimal written correspondence to correct one or two alleged instances of brief customer confusion and three administrative errors. And while Plaintiff claims that its reputation "for being a good value" has been tarnished by a customer receiving a quote containing Defendant's prices, the customer was able to recognize the error and contact Plaintiff. In fact, it would only be through comparison to a competitor's prices, such as Defendant's, that a customer could understand Plaintiff's services to be of "good value." Therefore, the hardship upon Plaintiff is minimal to nonexistent, and the balance of the hardships weighs against issuing an injunction that would cause substantial harm to Defendant.

An injunction would also harm the public interest by encouraging parties to assert frivolous trademark claims. Defendant has conducted business in Kentucky since 2011 without complaint. In December 2014, in its attempt to obtain its purported mark, Plaintiff represented to the Kentucky Secretary of State that it had been unaware of any other entity in Kentucky conducting business under the name "Industrial Automation." Plaintiff is now attempting to enjoin Defendant from conducting business under the only name it has used for decades. An injunction will only serve to reward Plaintiff's tactics, and has the potential to burden the courts with additional frivolous trademark claims.

Nor can it be in the public interest for the requested injunction to be issued at this early stage, only to be potentially, and most likely, dissolved upon a full adjudication of the merits. To the contrary, the public would be best served by avoiding such a potential loss of resources and

the resulting widespread confusion, disruption and burden – a result achievable only through the denial of Plaintiff's motion.

## CONCLUSION

For all the foregoing reasons, the extraordinary relief currently sought by Plaintiff should be denied. Through its instant injunction motion, Plaintiff seeks nothing less than an Order prohibiting Defendant Indus. Auto., LLC from "us[ing] the name 'Industrial Automation' during the pendency of this lawsuit" – the name Defendant has used for decades. Attempting to dispense with any type of factual discovery to probe the allegations asserted by Plaintiff, and a full adjudication of the substantive merits of the parties' claims, Plaintiff's motion seeks to radically turn the status quo on its head and have the Court award, at this preliminary stage, the final and ultimate relief sought in Plaintiff's Complaint.

As set forth above, Plaintiff cannot show a likelihood of success on the merits and has failed to establish that irreparable harm would occur absent an injunction. For those reasons, and because an injunction would cause substantial harm to Defendant and to the public interest, Plaintiff's injunction motion should be denied.

Respectfully submitted,

DINSMORE & SHOHL, LLP

/s/ Joseph P. Donohue
Joseph P. Donohue
Nicholas M. Haering
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2300
(502) 585-2207 (fax)
joseph.donohue@dinsmore.com
nicholas.haering@dinsmore.com
*Counsel for Defendant/Counterclaim Plaintiff*

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing was filed electronically this 15th day of May, 2015, through the ECF system which will serve a notice of electronic filing upon the following:

Julie A. Tennyson
410 Broadway
Paducah, Kentucky 42001
(270) 442-4369
(270) 442-4689 (facsimile)
jtennyson@bsgpad.com
*Counsel for Plaintiff*

                                        /s/ Joseph P. Donohue
                                        *Counsel for Defendant/Counterclaim Plaintiff*

9652364v1