UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00053-GNS-HBB

INDUSTRIAL AUTOMATION, INC.                                                          PLAINTIFF

v.

INDUSTRIAL AUTOMATION d/b/a
INDUSTRIAL AUTOMATION OF KENTUCKY, LLC                            DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Plaintiff, Industrial Automation, Inc., seeking a preliminary injunction against Defendant, Industrial Automation of Kentucky, LLC d/b/a Industrial Automation of Kentucky. (Pl.'s Mot. for Prelim. Inj., DN 7). Plaintiff seeks to enjoin Defendant from the use of "Industrial Automation" as a component of the Defendant's business name during the pendency of the litigation. Fully briefed, this matter is ripe for decision.

### I.   STATEMENT OF FACTS AND CLAIMS

Plaintiff is a corporation, organized under Kentucky law on October 11, 1994, with its principal place of business located in Russellville, Kentucky. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 1-2, DN 7-1).[1] Plaintiff alleges it provides services and expertise related to automated solutions for various industrial clients in the region. (Cantrell Aff. ¶ 3, DN 11-1).

On December 15, 2014 Plaintiff registered the mark INDUSTRIAL AUTOMATION, INC. with the Kentucky Secretary of State. (Pl.'s Mot. for Prelim. Inj. Ex. B at 1, DN 7-2).

---

[1] Plaintiff initially filed the present motion in Logan Circuit Court under Kentucky Rule of Civil Procedure 65.04, which provides for temporary injunctions. In contrast, Federal Rule of Civil Procedure 65 permits a party to seek a preliminary injunction. This Court will characterize the present motion as a motion for a preliminary injunction

Plaintiff had also registered the INDUSTRIAL AUTOMATION service mark with the Tennessee Secretary of State on July 15, 2014. (Pl.'s Mot. for Prelim. Inj. Ex. B at 2-3).

Defendant is a limited liability company, organized under Michigan law, with its primary place of business in Rochester Hills, Michigan. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 1, DN 7-1). Defendant has done business under the name Industrial Automation, LLC since 1992 and has full service locations in three states as well as Mexico. (Gust Aff ¶ 3, DN 10-1). Defendant initiated its Franklin, Kentucky, operation in April of 2011, and renders services virtually identical to those of Plaintiff. (Cantrell Aff. ¶ 3). Defendant is registered as a foreign business entity with the Kentucky Secretary of State under the assumed name "Industrial Automation of Kentucky, LLC." (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. Ex 2, DN 11-2).

The parties have coexisted for four years within 30 miles of one another. During that time, however, Plaintiff contends that customers and suppliers have confused the businesses, tarnishing Plaintiff's reputation. In support of this claim, Plaintiff cites instances of receiving vendor invoices intended for Defendant and receiving a direct deposit payment intended for Defendant. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. Ex. I, DN 7-2; Pl.'s Supplement to Mot. for Prelim. Inj. Exs. A-C, DN 9-1 to 9-3). Plaintiff also alleges that it received a phone call from a customer complaining about a price quotation that had actually been given by Defendant. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 1, DN 7-1). Finally, Plaintiff cites an error in the most recent iteration of the area phonebook that appears to indicate the two businesses are merely separate locations of the same entity as evidence of confusion. (Pl.'s Mot. for Prelim. Inj. Ex. E at 2, DN 7-2).

On February 19, 2015 Plaintiff demanded that Defendant cease the use of "Industrial Automation" in its business name; Defendant refused. (Pl.'s Supplement to Mot. for Prelim. Inj. Ex. E, DN 9-5). Subsequently, Plaintiff filed the present action against Defendant in Logan Circuit Court for service mark/trademark infringement and unfair competition. (Compl. 3-4, DN 1-2). Plaintiff additionally filed the instant motion seeking immediate injunctive relief. (Compl. 128). Defendant removed the action to federal court and filed a counterclaim seeking cancelation of Plaintiff's service mark on the basis that INDUSTRIAL AUTOMATION is too generic to be distinctive or develop secondary meaning. (Answer 8-9, DN 8). It is on this same basis that Defendant opposes the present motion. (Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., DN 10).

## II. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final decision of the merits of the action." *IP, LLC v. Interstate Vape, Inc.*, No. 1:14CV-00133-JHM, 2014 WL 5791353, at *2 (W.D. Ky. Nov. 6, 2014). In determining whether to issue a preliminary injunction, the Court will consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). The Court will make specific findings concerning each factor, "unless fewer are dispositive of the issue." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985) (citing *United States v. Sch. Dist. of Ferndale, Mich.*, 577 F.2d 1339, 1352 (6th Cir. 1978)).

### III. DISCUSSION

    A.    **Likelihood of Success on the Merits**

As a threshold matter, a successful action for service mark infringement requires a plaintiff to demonstrate that the mark at issue is a valid, protectable service mark.[2] *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark."(citation omitted)). In determining whether a service mark is valid it is well established that ""[a] generic term is the weakest type of mark; it is a term used to commonly describe the relevant type of goods or services, and cannot become a trademark under any circumstances." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116-17 (6th Cir. 1996) (internal quotation marks omitted) (citation omitted). Finally, "[w]hether a name is generic is a question of fact." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996) (citation omitted).

It is undisputed that Plaintiff has obtained state registrations of INDUSTRIAL AUTOMATION, INC. in Kentucky and INDUSTRIAL AUTOMATION in Tennessee. (Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. Ex. B, DN 7-1). "If a trademark has been registered, there is a presumption that term is not generic and the defendant must overcome the presumption." *Bath & Body Works*, 76 F.3d at 748 (citation omitted). In this case, industrial automation is "the use of control systems, such as computers or robots, and information technologies for handling different processes and machineries in an industry to replace a human being." (Pl.'s Supplement

---

[2] This case involves a service mark, which "means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 4:14 (4th ed. 1999). "Service mark infringement and trademark infringement are governed by identical standards." *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009 (5th Cir. 1975).

to Mot. for Prelim. Inj. Ex. E at 4, DN 9-5). Plaintiff offers services for engineering "control systems integration and the design and development of process control systems for industrial operations and manufacturing and process equipment, and the installation and optimization of process control software for manufacturing processes and equipment." (Pl.'s Mot. for Prelim. Inj. Ex. G at 3-4, DN 7-2). Simply put, Plaintiff's business *is* industrial automation. In other words, the name of the company strictly defines and details the types of services that it offers. Such definitional overlap between a company's name and services or products provided has been determined to be sufficient to overcome the presumption in favor of the plaintiff by virtue of its state registration. *See Liquid Control*, 802 F.2d at 937-38.

There is ample additional evidence in the record to support Defendant's assertion that INDUSTRIAL AUTOMATION is a generic term and thus not protectable. Defendant cites trademark registrations filed with the United States Patent and Trademark Office requiring applicants to disclaim INDUSTRIAL AUTOMATION as an element of their trademark because "an ingredient, quality, characteristic, function, feature, purpose, or use of [an] applicant's goods and services" is an unregistrable component of a Service Mark. (Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. Exs. D-E, DN 10-4 to 10-5). Additionally, the record indicates that a number of businesses across the country offer industrial automation services and operate under the name "Industrial Automation." (Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. Exs. B-C, DN 10-2 to 10-3).

Plaintiff further asserts that it is entitled to protection because INDUSTRIAL AUTOMATION has acquired a secondary meaning in Plaintiff's area of operation. (Pl.'s Mot. for Prelim. Inj. Ex. G at 2, DN 7-2). Secondary meaning, however, affords protection to terms

that are "merely descriptive." *Narton*, 305 F.3d at 404.[3] Generic terms, however, can *never* function as a valid service mark, and "evidence of acquired distinctiveness cannot suffice to convert a generic term into a registerable service mark." *Continental Airlines Inc. v. United Air Lines Inc.*, 53 U.S.P.Q.2d 1385 (BNA), 1999 WL 1288981, at *12 (T.T.A.B. 1999).

Ultimately, whether a mark is generic is a question of fact. Further discovery and adjudication will be necessary to sufficiently develop the issue and to determine whether INDUSTRIAL AUTOMATION is entitled to any protection as a service mark. On the current record, however, Plaintiff has failed to demonstrate a strong likelihood of success on the merits, which weighs heavily against the granting of Plaintiff's motion for preliminary injunction.

**B.** **Irreparable Harm**

The next factor that the Court must consider when deciding whether to grant a preliminary injunction is whether Plaintiff will suffer irreparable injury absent an injunction. *Tenke*, 511 F.3d at 550. Typically, "where a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course," *Ford Motor Co. v. Lloyd Design Corp.*, 22 F. App'x. 464, 469 (6th Cir. 2001) (citation omitted). In this case, Plaintiff has demonstrated instances of actual confusion as discussed above. Evidence of actual confusion, however, "may be dismissed as *de minimus* if it is of limited scope." *McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 808 (M.D. Tenn. 2000).

---

[3] The strength of a trademark is normally evaluated in terms of where the mark fits along a spectrum ranging from "(1) generic . . . and (2) *merely descriptive* to (3) suggestive and (4) arbitrary or fanciful." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984) (emphasis added) (quoting *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977)). "A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i.e.,* becoming 'distinctive of the applicant's goods' . . . , become a valid trademark." *Id.* (citation omitted). Thus, merely descriptive terms are treated separately and are afforded stronger protection than generic terms.

"Evidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence." *Id.* at 808-09 (internal quotation marks omitted) (citing 4 McCarthy, *supra*, § 23:14, at 23-43). During the four years that the parties have operated concurrently in the same geographic area, Plaintiff can point to one instance of customer confusion, three administrative errors involving invoicing and receipt of a payment intended for Defendant, and an error in the local phonebook that listed Plaintiff's and Defendant's numbers in a way that seemed to indicate they were part of the same business. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. 7, DN 11). Such limited instances of confusion during Defendant's extensive operation in Kentucky create a strong presumption that the confusion is *de minimus*.

Additionally, while a customer mistakenly called Plaintiff about a price quotation made by Defendant, the content of the customer's complaint was about Defendant's activity. After the error was recognized, the potential harm to Plaintiff's reputation was essentially mitigated. In fact, after the customer was informed that he had called the wrong number to complain the only entity whose reputation remained at risk was Defendant.

Plaintiff further asserts that the instances of confusion are more than *de minimus* because it is losing the opportunity to "receive or bid on jobs because [its] customers or former customers have been under the mistaken impression that [it] is not a separate entity" from Defendant. (Cantrell Aff. ¶13). In support of this allegation, Plaintiff points to an instance in which payments intended to be delivered to Defendant were inadvertently direct-deposited to Plaintiff's account. The record as presented, however, does not make it clear that the customer intended to conduct business with Plaintiff. While there was undoubtedly a clerical or administrative error in

issuance of the payment, there is little to indicate that the customer intended to do business with Plaintiff. Rather, the record substantiates an inference that the customer knew it was conducting business with Defendant and simply made a mistake in issuing payment. (Pl.'s Supplement to Mot. for Prelim. Inj. Ex. A at 2, DN 9-1) (email message from a customer acknowledging that the deposited funds were intended for the Defendant). Development of this issue necessitates further discovery and adjudication making an injunction at this time imprudent.

Finally, Plaintiff has failed to establish the immediate need for this extraordinary remedy. "To establish immediate and irreparable harm there must be an actual, viable, presently existing threat of serious harm." *C.A. Jones Mgmt. Group, LLC v. Scottsdale Indem. Co.*, No. 5:13-CV-00173, 2014 WL 811654, at *4 (W.D. Ky. Feb. 28, 2014) (citation omitted). The parties have operated concurrently for four years, and "[i]solated instances of actual confusion after a significant period of time of concurrent sales or extensive advertising do not always indicate increased likelihood of confusion in trademark infringement case, and may even suggest the opposite." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) (citation omitted). Because Plaintiff has failed to establish immediate irreparable harm this fact weighs against granting its motion for preliminary injunction.

### C. <u>Substantial Harm to Others</u>

The third factor in determining whether to issue a preliminary injunction is whether "the injunction would cause substantial harm to others." *Tenke*, 511 F.3d 550-51. Generally, this factor requires an examination of the balance of hardships between the parties. *IP, LLC*, 2014 WL 5791353 at *8. As previously discussed, Plaintiff has failed to show it would suffer substantial harm if its request for a preliminary injunction were denied. Defendant, however, will suffer significant and concrete harm upon issuance of the preliminary injunction. If the present

motion for preliminary injunction were granted, Defendant would be required to immediately cease its use of INDUSTRIAL AUTOMATION in its business dealings, which would force Defendant to "change and replace signage on all of its facilities, trucks, uniforms, and paperwork." (Gust Aff. ¶ 14). Not only would this impose a significant logistical and commercial burden on Defendant, as Defendant would be required to quickly overhaul its operations, but these changes would impose a substantial monetary hardship on Defendant. Additionally, Defendant would face significant logistical and commercial hardship in maintaining communication with clients.

Plaintiff contends that these harms are the product of Defendant's own "illegal and criminal" conduct and are thus not appropriate for consideration by the Court. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. 13, DN 11). Whether Defendant's conduct is in fact "illegal" or "criminal," however, is the direct issue before the Court and it would be improvident for the Court to credit Plaintiff's argument without further discovery and adjudication. Given the significant harm that is likely to be experienced by Defendant if the Court were to grant the motion, the Court finds that this factor weighs against Plaintiff.

### D. Public Interest

Finally, the Court must determine whether granting a preliminary injunction advances the public interest. *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 720 n.4 (6th Cir. 2003). Plaintiff has presented evidence of actual confusion on the part of customers and suppliers. Furthermore, it is recognized that "[e]quitable relief is probably the surest way to prevent further consumer confusion." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 700 (W.D. Ky. 2010). Injunctive relief, however, is an extraordinary remedy and the parties have operated concurrently for four years resulting in only

two alleged instances of customer confusion and three administrative errors. In weighing this factor, the Court must also consider how forcing Defendant to cease its use of the business name it has operated under for the past four years will create confusion for the public and Defendant's customers. Customers and the general public would experience a great deal of confusion in trying to contact and do business with Defendant upon the grant of an immediate injunction. Given that actual confusion, though minimal, has been shown this factor weighs in favor of granting Plaintiff's motion, though only slightly.

A preliminary injunction is an extraordinary remedy, and Plaintiff has failed to demonstrate an immediate and concrete need for the issuance of such exceptional relief. Moreover, preliminary injunctions are generally used to preserve the status quo, which for the entirety of the Defendant's four-year stay in the Commonwealth, has been to have the business operate concurrently. *See Stansbury v. Hopkins Hardwoods, Inc.*, No. 4:15-CV-00016-JHM, 2015 WL 461477, at *2 (W.D. Ky. Feb. 5, 2015). Considering the foregoing discussion, the Court finds that a preliminary injunction in regards to Defendant's use of INDUSTRIAL AUTOMATION mark as a component of its business name is inappropriate.

### IV. CONCLUSION

For the reasons detailed above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction (DN 7) is **DENIED**.

Greg N. Stivers, Judge
United States District Court

June 15, 2015

cc: counsel of record